IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LLANO FINANCING GROUP, LLC, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 15 c 7091<br>) |
| CHRIS LENDZION, JAMES SLIWA,<br>and J. SLIWA, INC., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Llano Financing Group, LLC, has sued defendants Chris Lendzion, James Sliwa, and J. Sliwa, Inc., asserting breach of contract and negligence claims arising out of a real estate appraisal that defendants completed in 2006. Defendants have moved to dismiss Llano's complaint for lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim. For the reasons stated below, the Court grants defendants' motion.

## Background

The Court takes the following facts from Llano's complaint, accepting them as true for present purposes. *See Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016); *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). In or around August 2006, Rodrigo Villegas applied for a loan from HLB Mortgage. An agent of HLB known as Executive Home Mortgage ordered a written appraisal report on HLB's behalf for the residential property in South Elgin, Illinois that Villegas planned to use as

security for the loan.

The appraisal was prepared by Lendzion in his role as a certified real estate agent working for J. Sliwa, Inc., and was signed by both Lendzion and his supervisor, Sliwa. In the appraisal, defendants certified that they performed the appraisal in accordance with common professional standards, developed their opinions of the property's market value based on sales comparisons and reliable data, and took into account factors that would impact the property's value. They also certified that:

> The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.

2d Am. Compl., dkt. no. 27, ¶ 21. Defendants appraised the value of the property at $365,000. Shortly thereafter and in reliance on the accuracy of defendants' appraisal, HLB funded a loan to Villegas in the amount of $292,000, secured by the property.

Following the economic collapse of 2008, the borrower—and hundreds of thousands of others like him—defaulted. Deutsche Bank National Trust Company, which by this point apparently owned the loan, foreclosed on the property on April 8, 2010. The property was sold on October 25, 2010, for substantially less than $365,000.

Llano's complaint alleges that defendants' appraisal was negligently prepared and contained material misrepresentations regarding the property, which made Villegas's loan significantly under-secured. According to the complaint, the market value of the property at the time HLB funded the loan was far less than $292,000. Llano alleges that HLB would not have funded the loan had it known the true market value of the property. Although the price paid for the property is not indicated in the second

2

amended complaint, it is alleged that Deutsche Bank took a loss of $226,073.08.

Deutsche Bank, however, did not bring this suit—Llano did. Llano purports to sue in its capacity as an agent for Impac Funding Corporation, the master servicer for Deutsche Bank. According to Llano's complaint, Deutsche Bank authorized Impac "to assign certain servicing functions and other duties to Savant LG, LLC," *id.* ¶ 3, including "any and all legal rights that it possessed to assert damage and negligence claims . . . against real estate appraisers and other tortfeasors . . . relating to certain loans [Impac] service[d], including [Villegas's loan]." *Id.* ¶ 4. Impac did this, and Savant in turn "delegated and assigned its duties, authority and legal rights to pursue" these tort claims against defendants to Llano. *Id.* ¶ 5.

Llano sued the defendants on August 13, 2015, alleging breach of contract, negligent misrepresentation, and professional negligence. Llano amended its complaint on September 30, 2015, and it filed a second amended complaint on October 29, 2015. Defendants have now moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6).

## Discussion

Defendants contend that all of Llano's claims must be dismissed. First, defendants argue that Llano's claims against James Sliwa should be dismissed pursuant to Rule 12(b)(5) because Llano did not properly serve Sliwa with process. Second, defendants argue that Llano lacks standing to sue, and they seek dismissal pursuant to Rule 12(b)(1). Third, defendants move for dismissal pursuant to Rule 12(b)(6), contending that Llano has failed to state cognizable breach of contract and tort claims.

3

**A.	Defendants' Rule 12(b)(5) motion**

Valid service of process is required for a Court to exercise personal jurisdiction over a defendant.  *See Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005).  Federal Rule of Civil Procedure 12(b)(5) permits a party to seek dismissal based upon insufficiency of service.  When a defendant invokes Rule 12(b)(5), the plaintiff bears the burden of demonstrating that proper service occurred.  *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011).  The Court may consider affidavits and other documentary evidence when determining whether service was effective.  *Purdue Research Found. v. Sanofi-Synthelabo*, 338 F.3d 773, 782–83 (7th Cir. 2003).  Any conflict in the supporting materials submitted by the parties is resolved in favor of the plaintiff.  *Id.* at 783.

Under Federal Rule of Civil Procedure 4(e), a federal court has personal jurisdiction over a defendant if (1) service is effected pursuant to the law of the state where the district court is located, (2) a copy of the summons and complaint is delivered to the defendant personally, (3) the summons is left at the defendant's dwelling or usual abode with a person of suitable age and discretion who resides there, or (4) the summons is delivered to an authorized agent of the defendant.  Fed. R. Civ. P. 4(e).  Illinois law requires that service of summons upon individual defendants be made by either leaving a copy of the summons with the defendant personally or both leaving a copy at the defendant's usual abode with a person of suitable age who resides there and sending a copy "in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode."  735 ILCS 5/2–203(a).  As Rule 4(e) makes clear, however, a plaintiff who chooses one of the Rule's latter three methods of

4

effecting service need not also abide by the local state's requirements.

In their opening memorandum, defendants contended that service was improper because the process server "left a copy of the complaint and summons for James Sliwa at his mother's house, rather than his 'dwelling' or 'abode.' Mr. Sliwa was not present at the time of service." Defs.' Mem., dkt. no. 33, at 13. They also contended that service on Sliwa was deficient because neither the process server nor Llano sent a copy of the summons by mail to Sliwa's usual place of abode. Defendants did not submit any evidence or supporting documentation in their motion to dismiss or memorandum in support.

In response, Llano pointed to the return of service, which says this:

> DEFENDANT TO BE SERVED: **James Sliwa**
>
> I, Served the within named defendant on September 13, 2015 @ 2:32 PM
>
> **SUBSTITUTE SERVICE:** by leaving a copy of this process at his/her usual place of abode with **Joan Sliwa**. (Title): **Mother**, a person residing therein who is the age of 13 years or upwards and informed that person of the contents thereof and that further mailed a copy of this process in a sealed envelope with postage paid addressed to the defendant at his/her usual place of abode on **09/15/2015**.

Dkt. no. 18. The Court notes that although the return of service states that the process server mailed a copy of the summons to Sliwa at the address where service was made, the process server did not need to do that. Even without that step, service of the summons and complaint upon Sliwa's mother at Sliwa's place of abode would be sufficient under Rule 4(e).

In reply, defendants shifted their stance. They attached an affidavit in which Sliwa states that his mother's address is not his usual place of abode. *See* Defs.' Reply, Ex. 2, dkt. no. 39-2, ¶¶ 3–6. If that is so, then service was deficient. Although the Court appropriately could disregard this argument because it was not made until

5

defendants' reply, it is preferable to clear the matter up now in order to avoid problems down the road.

Because it appears that Llano made a good faith mistake (assuming it was a mistake at all), the Court extends the period for service on Llano by twenty-eight days. *See Cardenas*, 646 F.3d at 1005 (when service has not been perfected, court has discretion regarding whether to dismiss or allow more time). The Court urges counsel for Sliwa to consider accepting service in order to avoid unnecessary disruption for his client .

**B.      Defendants' Rule 12(b)(1) motion: standing and real party in interest**

To demonstrate standing, a litigant must "prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Remijas v. Neiman Marcus Grp., LLC.*, 794 F.3d 688, 691–92 (7th Cir. 2015) (quoting *Hollingsworth v. Perry*, — U.S. —, 133 S. Ct. 2652, 2661 (2013)). Litigants can challenge standing as a facial matter or as a factual matter. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). A facial challenge requires a court to look to the complaint to see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *Id.* at 443. A factual challenge exists where the complaint is sufficient but the movant contends that there is *in fact* no subject matter jurisdiction. *Id.* at 444. Where, as in this case, a defendant mounts a factual challenge to a plaintiff's standing, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008).

Defendants argue that Llano lacks standing to sue because it has not suffered an actual injury and because it has not shown that it is the proper party to bring the claims it has brought against defendants. Put differently, defendants argue that Llano lacks standing and is not the real party in interest. "Both standing and real party in interest are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits." *Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993). Defendants present these two issues as though they are intertwined, but it is important to separate them. *FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir. 1988). A plaintiff has standing if she alleges an injury in fact that is traceable to the defendant's conduct and redressable by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). A plaintiff is the real party in interest where it actually possesses the particular right sought to be enforced. *See Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992). Standing is jurisdictional; the real party in interest doctrine is not. *FDIC v. Hartford Ins. Co. of Ill.*, 877 F.2d 590, 592 (7th Cir. 1989).

As an initial matter, Llano has sufficiently pleaded facts that demonstrate that it has constitutional standing. Llano's complaint is somewhat confusing because it alleges that HLB relied on defendants' misrepresentations and Deutsche Bank took a loss of $226,073.08, but that Llano was the party that was ultimately injured. *See* 2d Am. Compl., dkt. no. 27, ¶¶ 23–24, 33, 39, 45. But Llano's underlying allegation appears to be that HLB and Deutsche Bank relied on defendants' negligent misrepresentations and lost a significant amount of money as a result. Llano claims to bring this suit on behalf of either HLB or Deutsche Bank—albeit through multiple assignments—and a party in HLB's or Deutsche Bank's shoes claiming this type of pecuniary loss alleges a

cognizable injury in fact that is traceable to defendants' conduct and redressable through judicial action.

What is not clear from Llano's second amended complaint is the extent to which it possesses HLB's or Deutsche Bank's rights to sue. The question of who is the real party in interest is determined by looking to state law. *See Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996). Defendants contend that Deutsche Bank or one of its other assigns continues to possess the right to sue for the injuries alleged because any assignment of the claims Llano asserts, regardless of its scope, is an invalid, champertous assignment. Defendants are overreaching. Although Illinois continues to adhere to the longstanding tradition of prohibiting the assignment of personal injury tort claims, commercial torts and professional negligence claims are assignable under Illinois law. *See, e.g.*, *Daugherty v. Blaase*, 191 Ill. App. 3d 496, 500, 548 N.E.2d 130, 132 (1989).

Nevertheless, assignments like this must transfer the assignor's interest in a way that protects the defendant against repeat liability. As explained in the advisory committee notes to Federal Rule of Civil Procedure 17, the real-party-in-interest rule, the purpose of the doctrine is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Fed. R. Civ. P. 17(a), Advisory Committee Notes (1966)*; see also RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010). Llano has failed to plead with the clarity necessary to establish that it is actually the assignee of the claims it alleges and that every link in the chain of assignments validly transferred the right of action.

8

In a slightly different context, Illinois requires assignees suing in their own name to file verified complaints and attach assignment documents to those complaints in order to verify that valid assignments authorize the plaintiff to sue. *See Unifund CCR Partners v. Shah*, 2013 IL App (1st) 113658 ¶ 16, 993 N.E.2d 518, 524–25 (2013). Although doing this might help, it is not clear that federal law requires Llano to do this much; Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to furnish only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and federal courts sitting in diversity apply federal procedural law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 831 (7th Cir. 2015). But because of the paucity of factual information on this point in the complaint, it is impossible for the Court to determine whether Deutsche Bank and its other assigns, Impac and Savant, have fully relinquished the right to sue that Llano asserts. Llano alleges that at some point in time, Deutsche Bank came to own the note memorializing HLB's loan to Villegas; Deutsche Bank then made an assignment of some kind to Impac, which made an assignment of some kind to Savant, which made an assignment of some kind to Llano. This is insufficient to establish that Llano is the real party in interest or that defendants are not at risk of suit from Deutsche Bank, Impac, or Savant.

Rule 17 expressly provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The Court will thus grant Llano twenty-eight days to replead to attempt to cure this defect in its current complaint or to join the real party in

interest if the right to sue is held by someone other than, or in addition, to, Llano itself.

## C. Defendants' Rule 12(b)(6) motion

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering a motion to dismiss for failure to state a claim, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). To state a viable claim, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1. Llano's breach of contract claim (count 1)

Defendants contend that Llano has failed to state a cognizable breach of contract claim for three reasons. First, they argue that Llano has not alleged any right to bring contract claims against defendants as a party to a contract, an assignee, or an intended third-party beneficiary. Second, defendants argue that the sole basis for Llano's breach of contract claim is the negligent misrepresentations Llano alleges in its tort claims, and therefore Llano's claim sounds only in tort. Third, defendants contend that Llano has failed to sufficiently allege the elements of breach of contract.

It is not clear from the face of the complaint that Llano is properly situated to bring a breach of contract claim against defendants. Llano was not a party to the

contract it alleges defendants breached. "Illinois law holds a strong presumption against creating contractual rights in third parties, and this presumption can only be overcome by a showing that the language and circumstances of the contract manifest an affirmative intent by the parties to benefit the third party." *Estate of Willis v. Kiferbaum Const. Corp.*, 357 Ill. App. 3d 1002, 1007, 830 N.E.2d 636, 642 (2005). "Illinois recognizes two types of third-party beneficiaries, intended and incidental. An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract; an incidental beneficiary has no rights and may not sue to enforce them." *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005) (internal quotation marks omitted) (quoting *Estate of Willis*, 357 Ill. App. 3d at 1007, 830 N.E.2d at 643).

Llano claims that it is an intended beneficiary with rights to bring breach of contract claims because one certification attached to the appraisal specifically states that the lender's assigns may rely on the representations contained in the appraisal. But even if this certification evinced an intent to benefit the assignee of an assignee of an assignee of the loan's owner, it would not matter, because the complaint alleges only that Llano was assigned the right to bring tort claims relating to the appraisal.

The bigger problem, however, is that Llano has not sufficiently pleaded a cause of action for breach of contract. To state a claim for breach of contract under Illinois law, a plaintiff must plead "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 759,

814 N.E.2d 960, 967 (2004)). "Only a duty imposed by the terms of a contract can give rise to a breach." *W.W. Vincent & Co.*, 351 Ill. App. 3d at 759, 814 N.E.2d at 967.

Llano's breach of contract claim states that defendants "ordered a written appraisal report for the Property from the Defendants" in or around August 2006. 2d Am. Compl., dkt. no. 27, ¶ 15. Defendants "prepared the Appraisal and received valuable consideration for the Appraisal." *Id.* ¶ 28. Defendants certified in the appraisal that they visually inspected the property, performed the appraisal in accordance with professional standards, selected and used locationally, physically, and functionally similar comparators, noted adverse influences, did not withhold significant information, and understood that they could be held liable for intentional or negligent misrepresentations. *Id.* ¶ 29. Llano then alleges:

> 30. In entering into the agreement to provide the Appraisal, Defendants knew that the Appraisal would be used by the [HLB] and its assigns to evaluate the value of the Property in connection with a mortgage loan transaction. [HLB] and its assigns were intended beneficiaries of the agreement; indeed, Defendants expressly certified that 'the mortgagee or its successors and assigns . . . and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.'
>
> 31. Defendants materially breached the agreement when they, inter alia: (1) failed to accurately represent the value of the Property, (2) failed to prepare the Appraisal in conformity with USPAP, (3) failed to use comparable sales that were the most similar to the Property locationally, physically, and functionally, (4) failed to note all adverse influences in the Appraisal, and (5) withheld significant information from the Appraisal.

*Id.* ¶¶ 30–31. Finally, Llano alleges that HLB substantially performed, and that Llano suffered damages in the form of "a significantly under-secured mortgage loan from which only a fraction of the Loan was recovered through foreclosure." *Id.* ¶¶ 32–33.

Pointing to a case decided by another judge in this district, defendants argue that

these allegations sound in tort rather than contract. In *FDIC v. Masarsky*, 968 F. Supp. 2d 915 (N.D. Ill. 2013), the court noted that "Illinois courts have consistently held that the remedy for false representations in an appraisal is not found in contract law." *Id.* at 923 (citing *Duhl v. Nash Realty Inc.*, 102 Ill. App. 3d 483, 488, 429 N.E.2d 1267, 1272 (1981), and *Sampen v. Dabrowski*, 222 Ill. App. 3d 918, 926–27, 584 N.E.2d 493, 499 (1991)). Observing that the plaintiff "merely state[d] Defendants' alleged misrepresentations within the Appraisals and then conclude[d] that such misconduct constitute[d] breach of their contracts to appraise the Property," the court found that the plaintiff failed to sufficiently allege breach under Illinois law. *Masarsky*, 968 F. Supp. 2d at 924.

The court in *Masarsky* also observed that although certifications attached to the appraisals at issue guaranteed the appraisals' accuracy, failure to live up to these guarantees did not constitute a contractual breach because the plaintiff had not alleged that the appraisals or attached certifications were the contracts breached. *Id.* Llano argues that this is why *Masarsky* is not on point—because here, Llano contends (in response to the motion to dismiss, not in its complaint) that the appraisal itself is the contract that defendants breached. Unlike *Duhl* and *Sampen*, specific certifications attached to the appraisal guaranteed that defendants would satisfy professional standards that apply particularly to residential appraisals. For this reason, says Llano, failing to be duly diligent in accord with the guarantees in the certifications attached to the appraisal constitutes breach of the contract between HLB and Llano.

The problem with this argument lies in Llano's complaint. Llano alleges in its complaint that a contract was formed between HLB and the defendants when the

13

defendants entered into an "agreement to provide the Appraisal."  It is not clear from the face of the complaint whether the "agreement" to which Llano refers is an oral contract, a written contract not attached to the complaint, or the appraisal itself.  If it is a separate oral or written contract, Llano faces the same problem the plaintiff in *Masarsky* faced, for it has failed to sufficiently allege that compliance with industry standards and fulfillment of the guarantees in the appraisal's certification were terms of that separate contract.  Llano seems to suggest in response to defendants' motion that the contract breached is the list of certifications attached to the appraisal.  Yet the complaint separately discusses the "agreement to provide the Appraisal" and the appraisal itself.  Llano has not clearly alleged that either the appraisal or its attached list of certifications constitutes a binding and enforceable contract.

For these reasons, the Court dismisses Llano's breach of contract claim, with leave to amend.

### 2. Llano's tort claims (counts 2 and 3)

Finally, defendants seek dismissal of Llano's negligent misrepresentation and professional negligence claims.  Defendants argue that these claims are untimely because they were brought several years after the applicable statute of limitations had run.  Echoing their argument that Llano is not the real party in interest and is pursuing champertous litigation, defendants also contend that Llano has failed to allege all of the elements of these causes of action.

In Illinois, tort claims like those Llano has brought must be brought within five years from the date when the cause of action accrued.  735 ILCS 5/13-205.  The alleged misrepresentations were made in the appraisal in August 2006.  Defendants

14

contend that sometime between the market meltdown of 2008 and Deutsche Bank's institution of a foreclosure proceeding on April 8, 2010, Deutsche Bank knew or should have known that it had incurred injuries as a result of defendants' alleged negligent misrepresentations or professional negligence.

Defendants' statute of limitations argument is premature. Illinois applies a five-year statute of limitations to these claims, but it also applies the discovery rule, which "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 78–79, 651 N.E.2d 1132, 1135–36 (1995). Contrary to defendants' assertion, a borrower's default or the institution of a foreclosure proceeding is not necessarily an indication that the property was overvalued in the initial appraisal. And Deutsche Bank did not realize the significant pecuniary loss it alleges until it sold the property through foreclosure sale on October 25, 2010, less than five years before the filing of this suit. Through discovery, it may be revealed that Deutsche Bank knew or should have known prior to August 13, 2010 (five years prior to Llano's filing of this suit) that the appraisal was negligently drafted. But defendants' argument that Llano's tort claims are untimely is an affirmative defense that is appropriately addressed at a later stage of the proceedings, not on a motion to dismiss for failure to state a claim.

Defendants' argument that Llano has failed to state claims for negligent misrepresentation and professional negligence also lack merit. The elements of negligent misrepresentation under Illinois law are (1) a false statement of material fact, (2) intention to induce action on the part of another party, (3) action by that other party

in reliance on the truth of the false statement, and (4) resulting damage to the reliant party. *See Kopley Grp. V., L.P. v. Sheridan Edgewater Props., Ltd.*, 376 Ill. App. 3d 1006, 1017, 876 N.E.2d 218, 228 (2007). "[I]n negligent misrepresentation actions, a successful plaintiff must plead and prove that the defendant owes a duty to the plaintiff to communicate accurate information." *Id.* "A cause of action based on professional negligence requires the following elements: '(1) the existence of a professional relationship, (2) a breach of duty arising from that relationship, (3) causation, and (4) damages.'" *SK Partners I, LP v. Metro Consultants, Inc.*, 408 Ill. App. 3d 127, 129, 944 N.E. 2d 414, 416 (2011) (quoting *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 14, 845 N.E.2d 22, 30 (2006)). Defendants' argument on these claims is essentially a reframing of its earlier argument that Llano is not the appropriate plaintiff to be bringing this suit: because Llano was late to the game and is a sub-sub-sub-assignee, it has not alleged that defendants owed it a duty or that there was a professional relationship between itself and the defendants.

Llano has alleged that the statements contained in the appraisal that HLB commissioned were made subject to the professional relationship between HLB and the defendants. It has alleged that defendants were negligent and misrepresented the value of the property because they did not use adequate comparators and otherwise failed to comply with industry standards when conducting the appraisal. And it has alleged that defendants provided the appraisal and its overvaluation of the property with the intention of inducing HLB's and Deutsche Bank's reliance on their accuracy and veracity. Llano has alleged that defendants owed a duty and had a relationship with the purported assignors, so if Llano was indeed assigned all tort claims from HLB and

Deutsche Bank, it has stated claims for negligent misrepresentation and professional negligence. The Court expects that this point will be cleared up if and when Llano files an amended complaint clearing up its status as assignee.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss in part [dkt. no. 32] and gives plaintiff until April 4, 2016 to file a proposed amended complaint. The case is set for a status hearing on April 11, 2016 at 9:30 a.m.

_____

Date: March 11, 2015